UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN ABBASSI,<br><br>              Plaintiff,<br><br>    v.<br><br>ERIC GAUDIOSI, et al.,<br><br>              Defendants. | Case No. 1:23-cv-01573-CDB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 9) |

      Plaintiff Susan Abbassi ("Plaintiff") initiated this action with the filing of a complaint against Defendants Eric Gaudiosi and Antony Blinken ("Defendants") on November 7, 2023. (Doc. 1). Plaintiff's action seeks to compel Defendants to act on and adjudicate her fiancé's filed I-129F visa application. (Doc. 1 ¶1).

      Pending before the Court is Defendants' motion to dismiss or in the alternative for summary judgment, filed January 12, 2024. (Doc. 9). Plaintiff filed an opposition on January 26, 2024, and Defendants filed a reply on February 5, 2024. (Docs. 11, 14). For the reasons set forth below, Defendants' motion to dismiss will be granted.

**I.    Background.**

    **A.    General Allegations**

      Plaintiff alleges that in August 2021, she filed a visa petition with the United States Citizenship and Immigration Service ("USCIS") on behalf of her fiancé, Hassan Ahmadi ("Ahmadi"), and although the USCIS approved the petition in October 2022, Ahmadi's visa application remains pending since the 2021 filing date. (Doc. 1 ¶¶2-3). While Plaintiff alleges that consular officers from the U.S. Embassy in the United Arab Emirates took no further steps to

adjudicate the visa application and continue to retain jurisdiction over her petition and Ahmadi's visa application (*id.* ¶3), she also alleges that her fiancé was interviewed by a consular officer in connection with the application in June 2023. *Id.* ¶18.

Plaintiff claims that Defendants failed to conclude processing of Ahmadi's visa application within a reasonable time. *Id.* ¶4. As a result of Defendants' delay, Plaintiff has been separated from her fiancé since 2021, which resulted in significant personal, emotional, and financial hardship. *Id.* ¶5. Plaintiff further alleges that she is visually impaired and has only been able to visit Ahmadi three times since 2021. During those trips, Plaintiff required assistance the entire time, which had a significant impact on her emotional, personal, and physical health.

Plaintiff is afraid to visit Ahmadi in Iran due to her U.S. citizenship and the animosity between the two nations. In addition, Plaintiff relies on assistive technology, which she would not have access in Iran. Plaintiff also alleges that she needs assistance for transportation which is not reliably available because of her fiancé's absence. *Id.* ¶6. Plaintiff alleges that the stresses related to her fiancé's visa application caused her to suffer severe weight loss and to put her wedding plans on hold and that she deeply fears that she will lose her opportunity to become a mother due to her age. *Id.*

**B.  The Immigration and Nationality Act**

The Immigration and Nationality Act (INA) authorizes the issuance of immigrant visas to certain relatives of U.S. citizens (including "intended spouses"). *See* 8 U.S.C. §§ 1151, 1153, 1154. To commence the nonimmigrant visa application process, the U.S. citizen files a visa petition with USCIS to confirm that the noncitizen beneficiary has a qualifying relationship with the U.S. citizen or LPR petitioner. *See* 8 U.S.C. §§ 1153(a), 1153(f), 1154(a)(1); *see also* 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). "If USCIS approves the petition, it forwards the petition to the State Department's National Visa Center (NVC). Then, the foreign national must complete the visa process with the U.S. consulate in her country." *Ortiz v. U.S. Dep't of State*, No. 1:22-cv-00508-AKB, 2023 WL 4407569, at *1 (D. Idaho July 7, 2023) (internal citation omitted). Following an applicant interview, the consular official adjudicates the visa application and determines eligibility. *See* 8 U.S.C. §§ 1201-1202. The consular official must

either issue the visa or refuse the application. *See* 8 U.S.C. § 1201; 22 C.F.R. § 42.81(a).

### C. The Visa Petition

According to her allegations in the complaint, Plaintiff properly filed her visa application on August 2021. *Id.* ¶15. The petition was approved in October 2022. *Id.* ¶16. Thereafter, in June 2023, Ahmadi was interviewed by the U.S. Embassy in the United Arab Emirates in connection with the case. *Id.* ¶18. During this interview, a consular officer reviewed Ahmadi's case, and he responded truthfully to all questions and provided all requested information. However, after this interview, Ahmadi learned that this case was placed in administrative processing pursuant to the Immigration and Nationality Act ("INA") §221 (g).

As alleged in the complaint, a "refusal" under INA §221(g) places an application into a status called "administrative processing," a temporary measure which signals the applicant that process is ongoing while the Department of State continues to gather information. *Id.* ¶20 (citing *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 284 (D.D.C. 2016)). Plaintiff argues that it is unclear what steps, if any, Defendants are taking to complete adjudication of Ahmadi's visa application.

In her complaint, Plaintiff asserts three causes of action, all premised on Defendants' delay in adjudicating Ahmadi's visa application: (1) Unreasonable Delay under the Administrative Procedure Act ("APA"); (2) Mandamus Act relief; and (3) Fifth Amendment – Due Process.

## II. Standard of Law

### A. Failure to State a Claim – Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter*

1 *Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

2     To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

    When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

    "For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp.2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1162, n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id*.  In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id*. at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  *Accord*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002)  "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)'." *Hamilton*, 746 F. Supp. 2d at 1168 (quoting *United States v. Ritchie*, 342

4

1  F.3d 903, 908 (9th Cir. 2003)).

2  When dismissal is appropriate, a court should grant leave to amend unless the plaintiff
3  could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d
4  936, 942 (9th Cir. 2009) (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

5  **III.     Discussion**

6          **A.     The Court Declines to Convert Defendants' Motion to a Motion for Summary
7                  Judgment**

8  In addition to their respective legal briefs on Defendants' motion to dismiss and in the
9  alternative for summary judgment, the parties each filed various documents relevant to the visa
10 application at issue. Those documents include: (1) a declaration by an attorney-advisor in the
11 Office of Assistant Legal Adviser for Consular Affairs, U.S. Department of State (Doc. 9-1); (2)
12 purported correspondence with the U.S. Department of State (Doc. 11-1); and (3) a hearing
13 transcript on a plaintiff's motion for temporary restraining order in a case arising in the District of
14 D.C. (*Obiedat v. Blinken*) (Doc. 14-1).

15 In the Ninth Circuit, "a motion to dismiss is not automatically converted into a motion for
16 summary judgment whenever matters outside the pleading happen to be filed with the court and
17 not expressly rejected by the court." *N. Star Int'l*, 720 F.2d at 582 (holding that district court
18 properly treated motion as motion to dismiss, despite presence of affidavits, where there was no
19 indication of the court's reliance on outside materials and the court expressly stated that it was
20 dismissing for failure to state a claim upon which relief could be granted); *see Keams v. Tempe
21 Tech. Institute, Inc*., 110 F.3d 44, 46 (9th Cir. 1997) ("12(b)(6) motion need not be converted into
22 a motion for summary judgment when matters outside the pleading are introduced, provided that
23 'nothing in the record suggest[s] reliance' on those extraneous materials"). Rather, a motion to
24 dismiss supplemented by a party's extraneous materials is regarded as one for summary judgment
25 only when the court "acts to convert the motion by indicating, preferably by an explicit ruling,
26 that it will not exclude those materials from its consideration." *Swedberg v. Marotzke*, 339 F.3d
27 1139, 1146 (9th Cir. 2003).

28 No such action is taken in this case. The Court will disregard each party's proffered

information presented outside of the complaint and declines to convert Defendants' motion to dismiss into a motion for summary judgment.

### B.     The Doctrine of Consular Non-Reviewability Does Not Bar Review

Defendants argue that Plaintiff's claims fail under the doctrine of consular non-reviewability.  Under the doctrine of consular non-reviewability, "ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Khachatryan v. Blinken*, 4 F.4th 841, 851 (9th Cir. 2021) (quoting *Allen v. Milas*, 896 F.3d 1094, 1104-05 (9th Cir. 2018)). "As with many judicially created rules, however, consular nonreviewability admits an exception." *Munoz v. U.S. Dep't of State*, 50 F.4th 906, 909 (9th Cir. 2022), petition for rehearing en banc den'd, 73 F.4th 769 (9th Cir. 2023).  "Where the denial of a visa affects the fundamental rights of a U.S. citizen, judicial review of the visa decision is permitted if the government fails to provide a facially legitimate and bona fide reason for denying the visa, or if – despite the government's proffer of a facially legitimate and bona fide reason – the petitioner makes an affirmative showing that the denial was made in bad faith." *Id*. (internal quotations and citations omitted).

However, numerous district courts within and outside the Ninth Circuit, including at least one judge of this Court, have held under circumstances similar to those presented in the instant case that the doctrine does not apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'" *See Quiros v. Amador*, No. 21-02433 (CKK), 2023 WL 4364161, at *3 (D.D.C. July 6, 2023) (citing cases), appeal filed (Aug. 11, 2023). *See also Mohamed v. Pompeo*, 1:19-cv-01345-LJO-SKO, 2019 WL 4734927, at *4 (E.D. Cal. Sept. 27, 2019). Relevant here, courts find that the doctrine of consular non-reviewability does not bar judicial review "where a visa application remains in administrative processing." *Quiros*, 2023 WL 4364161, at *3 (citing, inter alia, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98-99 (D.D.C. 2020)) (refusing to apply the consular non-reviewability doctrine where the "visa application remains in administrative processing" and the government actively seeks additional information from the applicant); *Mohamed*, 2019 WL 4734927, at *4 ("This Court … finds persuasive the reasoning of other Courts that have found the 'administrative processing' designation insufficient to constitute a refusal."). That is because the status of "administrative

processing" coupled with the government's request of the visa applicant for additional information suggests the application "has not been adjudicated to a final refusal." *Gonzalez v. Baran*, No. 2:21-cv-05902-CAS-ASx, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11, 2022) (citing cases); accord *Shahijani v. Laitinen*, No. 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023). *Cf. Taherian v. Blinken*, No. SACV 23-01927-CJC (ADSx), 2024 WL 1652625, at *3 (C.D. Cal. Jan. 16, 2024) ("it does not seem that Plaintiffs' visa applications have been finally ruled upon such that their claims would be rendered moot. Rather, Plaintiffs' claims are 'still pending necessary administrative processing'").

Defendants cite this Court to the Ninth Circuit's unreported decision in *Bechirian v. Blinken* (No. 20-55913, 2022 WL 260052 (9th Cir. Jan. 27, 2022)) where the court relied on the doctrine of consular non-reviewability to affirm dismissal of a complaint seeking relief based on the government's denial of a visa application. (Doc. 9 p. 6). However, the facts of that case are distinguishable from those presented here. In the complaint and attached exhibits at issue in *Bechirian*, the plaintiff alleged that the consular officer denied a renewed visa application and recommended revocation of the petition because the applicant "failed to provide proof of a credible relationship with [the petitioner]." *Bechirian*, 2022 WL 260052, at *1; *see* (No. 2:20-cv-01718-PSG-JEM (C.D. Cal.), Docs. 1 ¶51 & 1-2 Ex. Q). Neither the district court nor the Court of Appeals in their respective decisions addressed or acknowledged the "administrative processing" argument Plaintiff raises here – to wit, that the "initial designation of 'refused'" in connection with the visa application for Plaintiff's fiancé "does not constitute a final denial or completion of the adjudication process." (Doc. 11 p. 12).

Given no binding Ninth Circuit decision addressing the applicability (or non-applicability) of the doctrine of consular non-reviewability under the circumstances present here, the Court agrees with what it perceives as the prevailing position among most other district courts to have considered the issue, including decisions cited herein, finding that the doctrine does not bar review of an as-yet final adjudication of a visa application in administrative processing.

### C.    Plaintiff's APA and Mandamus Relief Claims

The Court has subject matter jurisdiction over an APA claim under 28 U.S.C. § 1331.

7

1  *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021); *see Vaz v. Neal*, 33 F.4th 1331, 1135
2  (9th Cir. 2022) ("[T]he requirements for obtaining relief under the APA go to the merits, not to
3  subject matter jurisdiction.") (citation omitted).  Under the Mandamus Act, "[d]istrict courts have
4  jurisdiction 'to compel an officer or employee of the United States or any agency thereof to
5  perform a duty owed to the plaintiff.'" *Agua Caliente Tribe of Cupeno Indians of Pala Rsrv. v.*
6  *Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (quoting 28 U.S.C. § 1361); *see also Indep. Min.*
7  *Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) ("The [Mandamus Act] provides district courts
8  with mandamus power 'to compel an officer or employee of the United States or any agency
9  thereof to perform a duty owed to the plaintiff.'") (quoting 28 U.S.C. § 1361).

10       "The standard by which a court reviews this type of agency inaction is the same under
11  both Section 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246
12  F. Supp. 3d 147, 152 (D.D.C. 2017); *Vaz*, 33 F.4th at 1135 ("[M]andamus relief and relief under
13  the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and
14  the APA and there is an adequate remedy under the APA.") (citations and internal quotation
15  marks omitted); *Indep. Min*, 105 F.3d at 507 (noting "the Supreme Court has constructed a claim
16  seeking mandamus under [§ 1361], 'in essence,' as one for relief under § 706 of the APA")
17  (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).  Accordingly,
18  courts may treat the inquiry under each statute as coextensive with the other. *See e.g., Agua*
19  *Caliente*, 932 F.3d at 1216 (analyzing claims for relief under the APA and the Mandamus Act
20  together "because the relief sought is essentially the same."))

21       The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. §
22  555(b), and permits a court to "compel agency action unlawfully withheld or unreasonable
23  delayed," *Id*. § 706(1).  "A court can compel agency action under this section only if there is a
24  'specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the
25  agency failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d
26  1068, 1075 (9th Cir. 2016) (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55,
27  63-64 (2004)). "[T]he purportedly withheld action must not only be 'discrete,' but also '*legally*
28  *required*' – in the sense that the agency's legal obligation is so clearly set forth that it could

traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citing *Norton,* 542 U.S. at 63) (emphasis in original). A court may compel agency action under the APA when the agency (1) "has a clear, certain, and mandatory duty," and (2) has "unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (citations and internal quotation marks omitted).

Although some courts have found that the timely refusal of a visa application pending administrative processing defeats an APA unreasonable delay claim, the majority of courts hold otherwise. *Cf. Conley v. U.S. Dep't of State*, No. 24-10131-FDS, 2024 WL 1640074, at *4-5 (D. Mass. Apr. 16, 2024) (citing cases holding that once action on a visa application has been taken, there no longer is a viable APA claim of unreasonable delay) *with* S*hahijani*, 2023 WL 6889774, at *3 (holding that a refusal pending administrative processing does not defeat an APA unreasonable delay claim) (citing *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997)) (holding a "refusal" of a visa application "is not a refusal within the meaning of 22 C.F.R. § 42.81" if "it is not a final decision.").

In determining whether an agency's delay is unreasonable, the Court applies the six "*TRAC*" factors, named after the balancing test announced in *Telecomms. Rsch. & Action Ctr.* ("*TRAC*") v. *F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984). *In re A Cmty. Voice*, 878 F.3d 779, 783-84 (9th Cir. 2017) (citing *Indep. Min.*, 105 F.3d at 507). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason[";]
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and
>
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably

delayed.'"

*Vaz*, 33 F.4th at 1137 (quoting *TRAC*, 750 F.2d at 80).

### 1. *TRAC* Factor #1 – Rule of Reason

"The most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d at 786 (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). In the context of alleged unreasonable delay involving visa application processing, "[t]he delay is measured from the time that Plaintiffs attended their interview, not the time that they first petitioned USCIS." *Ferdowski v. Blinken*, No. 8:23-cv-01123-JWH-KES, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024) (citing S*hahijani*, 2023 WL 6889774, at *3). "Generally, courts have found 'immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Ortiz*, 2023 WL 4407569, at *8 (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022)). And at least one court has concluded a delay of "slightly more than a year is drastically short of what constitutes an unreasonable delay in the Ninth Circuit." *Id.* (quoting *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

Here, as alleged in the complaint, after Ahmadi's consular interview in June 2023, his visa application was placed in administrative processing which reflects that the processing is ongoing while allowing the U.S. Department of State to gather additional information. (Doc. 1 ¶20). The U.S. Department of State's consular electronic application center reflects that Ahmadi's case was last updated on October 13, 2023 (*i.e.,* approximately four months after the interview).[1] Accordingly, "[t]his is not a case, therefore, where there is no identifiable rationale behind Defendants' delay; the Department appears to have needed additional information to reach a decision." *See Davila v. Cohan*, No. 23-CV-1532 JLS (BLM), 2024 WL 711618, at *6 (S.D. Cal.

---

[1] *See* https://ceac.state.gov/ (last visited May 3, 2024). Pursuant to Fed. R. Evid. 201(b)(2), this Court properly may take judicial notice of information available on the website of the U.S. Department of State pertaining to the status of a visa application. *E.g.*, *OC Modeling, LLC v. Pompeo*, No. CV 20-1687 PA (MAAx), 2020 WL 7263278, at *1 n.1 (C.D. Cal. Oct. 7, 2020).

Feb. 21, 2024).

This factor weighs in favor of Defendants as the alleged delay in this case between the date Plaintiff's fiancé was interviewed (June 2023) and the date of this order is less than 12 months.

### 2. *TRAC* Factor #2 – Congressional Timeline

"[W]here Congress has provided a timetable or other indication of the speed which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the] rule of reason" analysis. *TRAC*, 750 F.2d at 80.

Plaintiff argues that while there may be no apparent definitive statutory deadlines for visa adjudications, "Congress has expressed that immigration-benefit applications should be adjudicated within six months." (Doc. 11 p. 27) (citing *Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022) (discussing 8 U.S.C. § 1571(b)).

Section 1571(b) states that "[i]t is the sense of the Congress" that immigrant benefit applications should be processed within 180 days, which has been interpreted by the Ninth Circuit as a "precatory" provision that does not "create individual rights or …any enforceable law." *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007).  Courts either give slight weight to the precatory language in § 1571(b) or disregard it in favor of case authority given that the "sense of Congress" language is nonbinding. *Cf. Fisher v. Renaud*, No. 21-cv-2690-DMG, 2022 WL 3574703, at *5 (C.D. Cal. July 15,2022) (finding that precatory language "tip the scales slightly in favor of immigration benefit petitioners") *with Ortiz*, 2023 WL 4407569, at *8 (discounting section 1571(b)).

The Court finds this factor is neutral given that the visa application at issue was adjudicated through interview, refused, and placed in ongoing administrative processing with additional action taken approximately six months ago.  *See supra* n.1.

### 3.  *TRAC* Factors #3 and #5 – Prejudice and Health/Welfare Implications

The third and fifth factors overlap and will be considered together by the Court.  *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014); *see Singh v. Bardini*, No. 2:22-cv-01027-JAM-DB, 2023 WL 4669864, at *3 (E.D. Cal. July 20, 2023) (considering the third and fifth

*TRAC* factors together).

In this case, Plaintiff alleges that she is experiencing significant personal and financial hardship. (Doc. 1 ⁋ 5). For instance, Plaintiff is visually impaired and requires assistance for her transportation needs. Plaintiff also alleges that because of the processing delay she has suffered from significant stress, weight loss, and had to put her wedding with her fiancé on hold. *Id*. ⁋6. Plaintiff further worries that due to her age, she may never have the experience of being a mother. *Id*.

While the Court acknowledges that Plaintiff's circumstances involving prolonged separation of family "may place health and welfare at stake" (*see Ghalambor v. Blinken*, No. CV 23-9377-MWF (BFMx), 2024 WL 653377, at *6 (C.D. Cal. Feb. 1, 2024)), courts confronting similar circumstances consider "the government's competing priorities and the fact that pushing [Plaintiffs'] application to the front of the line would delay the applications of others, who also have human welfare and interests at stake." *Ferdowski*, 2024 WL 685912, at *5 (quoting *Shahijani*, 2023 WL 6889774, at *4). Accordingly, the Court finds these factors are neutral.

**4. *TRAC* Factor #4 – Effect of Expediting Delayed Action on Other Priorities**

When evaluating the fourth *TRAC* factor, courts consider whether the delay stems from a "resource-allocation issue," which would "put[] [petitioner] at the head of the queue simply mov[ing] all others back one space …[,] produc[ing] no net gain." *Vaz*, 33 F.4th at 1138 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75-76 (D.C. Cir. 1991)).

Under circumstances similar to those presented in this case – where only post-interview delay is alleged – courts have applied *In re Barr Lab'ys* at the motion to dismiss stage and concluded that the fourth *TRAC* factor weighs strongly in favor of the government. *E.g., Davila*, 2024 WL 711618, at *8. *Cf. Skalka*, 246 F. Supp. 3d at 154 (processing of visa applications is "the very type of agency action …that if compelled would presumably delay other adjudications"). Only where a plaintiff asserts unreasonable delay in the scheduling of an interview will courts weigh this factor differently. *E.g., Ghalambor*, 2024 WL 653377, at *6 (concluding that fourth factor was neutral at motion to dismiss stage where Defendant "failed to establish the existence of a line, Plaintiffs' place therein, or any potential burden to expedite

12

Plaintiffs' application" after 19-month delay in scheduling interview).

As Plaintiff argues in her opposition, she merely is asking Defendants to complete adjudication of the visa within a reasonable time as required by law. (Doc. 11 p. 29). However, "where an agency's progress on one individual's application would necessarily negatively impact another application, courts have held that plaintiffs' recourse is with Congress, not the courts." *Liu v. Denayer*, No. CV 21-6653-DMG, 2022 WL 17370527, at *5 (C.D. Cal. July 18, 2022). Plaintiff does not provide a compelling justification as to why she should skip ahead of other similarly situated petitioners who have not sued, thus the Court finds the fourth factor weighs in favor of Defendants.

### 5. *TRAC* Factor #6 – Bad Faith

For the sixth factor, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Indep. Min.*, 105 F.3d at 510 (internal quotation marks omitted). The sixth *TRAC* is "not really a 'factor, but merely a confirmation that agency delay need not be intentional to be unreasonable.'" *Feng v. Beers*, No. 2:13-cv-02396 JAM, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014).

Here, Plaintiff acknowledges that she does not allege any impropriety and instead argues that the Court has no evidence on which to make this evaluation without discovery. (Doc. 11 p. 30). Absent any allegations or argument reasonably suggesting bad faith or impropriety on the part of Defendants, the Court finds this factor is neutral.

\* \* \* \* \*

In sum, *TRAC* factors one and four strongly favor Defendants, whereas the remaining factors are neutral. The Court finds that the overall balance favors Defendants as factor one, which is the most important factor, weighs heavily in their favor. *In re A Cmty. Voice*, 878 F.3d at 786. Put in simpler terms, Plaintiff has failed to state an APA or Mandamus Act claim based on unreasonable delay.

The Court finds that no amendment would change the Court's conclusion at this time given that, as a matter of law, the time during which Ahmadi's visa application has remained pending is not remotely close to the general duration other courts have found constitutes an

unreasonable delay. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020) ("A district court acts within its discretion to deny leave to amend when amendment would be futile.") (internal citations omitted). Therefore, the claims are dismissed without leave to amend, but also without prejudice to be refiled no earlier than June 2026 should later circumstances demonstrate an unreasonable delay.

### D. Plaintiff's Due Process Claim

Plaintiff's third cause of action alleging violation of substantive and procedural due process under the Fifth Amendment to the U.S. Constitution is premised on the same conduct as her other causes of action – to wit, Defendants' delay in adjudicating Plaintiff's fiancé's visa application. (Doc. 1 ¶¶35-38). In opposition to Defendants' motion to dismiss, Plaintiff purports to expand the scope of this claim by invoking her alleged "implied fundamental right to family unity." (Doc. 11 p. 32).

Plaintiff cites no authority for the proposition that the substantive and procedural process Defendants have applied to her fiancé's visa application arises to a constitutional violation. "[T]he Supreme Court has already held that the regulation of spousal immigration does not impinge on a spouse's fundamental liberty interest." S*hahijani*, 2023 WL 6889774, at *5 (citing *Kerry v. Din*, 576 U.S. 86, 96 (2015)). As the Court already has concluded that the visa application process at issue is not delayed unreasonably and in light of Plaintiff's failure to support her due process arguments with authority, the Court concludes Plaintiff's third cause of action fails to state a claim that cannot be remedied. *See Davila*, 2024 WL 711618, at *9-10.

### IV.    Conclusion

For the foregoing reasons, it is HEREBY ORDERED:

1. Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9) is GRANTED;

2. Plaintiff's APA claim and Mandamus Act claim are DISMISSED without leave to amend, without prejudice to be refiled no earlier than June 2026 should later circumstances demonstrate an unreasonable delay; and

///

3.  Plaintiff's due process claim is DISMISSED without leave to amend, with prejudice.

IT IS SO ORDERED.

Dated: __**May 6, 2024**__                    _____
                                               UNITED STATES MAGISTRATE JUDGE